John Edwin MYERS, Appellant,

v.

The STATE of Texas, Appellee.

No. 35442.

Court of Criminal Appeals of Texas.

March 27, 1963.

---

Orvan B. Jones, Richard L. Stone, Jacksonville, for appellant.

Guilford L. Jones, Big Spring, Hulon B. Brown, Jacksonville, and Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

The conviction is for murder; the punishment, death.

The trial was had in Cherokee County on a change of venue from Howard County.

The evidence introduced by the state reveals that the appellant is guilty of the planned, deliberate, and brutal murder of Arthur Lee Dekraai by shooting him with a pistol. Two written statements made and signed by the appellant were introduced in evidence by the state and they show a killing by him of the deceased without any justification; and said statements were sufficiently corroborated.

Appellant did not testify but called Ben England, a psychologist, and Dr. Charles W. Folsom, physician and surgeon engaged as a psychiatrist, and both were employed at the Rusk State Hospital. By their testimony he sought to support his plea of insanity at the time of the commission of the offense and also at the time of the trial.

In rebuttal on the issues of insanity, the state called Dr. James H. Kreimeyer, physician and surgeon, employed as a psychiatrist at the Rusk State Hospital.

Only three witnesses testified on the issues of insanity and they were: England and Folsom for the appellant, and Kreimeyer for the state.

Appellant contends that the trial court erred in refusing to grant his first amended motion for new trial based upon alleged jury misconduct. The specific complaints are that the statements of two jurors before the others in the jury room discredited the the testimony of appellant's witnesses England and Folsom, and that the statements of Westbrook, foreman of the jury, bolstered the testimony of the state's witness Dr. Kreimeyer.

In his motion appellant alleges that while the jury were considering the insanity issues, two jurors (Musick and Hudnall) stated that they knew and were well acquainted with the witness Ben England and they would give no credence to his testimony. In addition, one juror said Dr. Folsom was "not so hot", and argued that if he was qualified and capable he would not be working for "peanuts" at the Rusk State Hospital. At this point, Juror Richards asked if this also applied to Dr. Kreimeyer, the state's witness. Juror Westbrook, the foreman of the jury, replied that he knew Dr. Kreimeyer, that he was a good man and an excellent doctor who had left a good private practice because he was an arrested TB case.

In support of his motion the appellant attached the affidavits of Jurors Westbrook, Darnell, Rountree, and Homer Davis. These affidavits reveal:

Westbrook, the foreman of the jury, states that during the lengthy deliberations on the sanity issues, Juror Richards who was contending that the appellant was insane on both dates asked if the statements about England and Folsom applied to Dr. Kreimeyer. In reply Westbrook said that he knew Dr. Kreimeyer personally, that he was a good man and a good doctor and the

only reason he was retired from private practice and working for a low salary was the fact that he was an arrested TB case.

Juror Darnell states that based on England and Folsom's testimony he had voted to find appellant insane on both dates until the Jury Foreman Westbrook told the jury he was personally acquainted with Dr. Kreimeyer, who had left a good private practice and was working for a low salary at Rusk State Hospital due to the fact that he was an arrested TB case, and that he was an excellent doctor and well qualified in his field.

Juror Homer Davis did not mention Dr. Kreimeyer in his affidavit.

Juror Rountree in his affidavit recites that the Foreman of the jury, Westbrook, stated that he was personally acquainted with Dr. Kreimeyer, that he was an excellent doctor and a good man who had left a good practice solely because he was an arrested TB case.

The state controverted the motion of appellant and attached thereto affidavits of the following jurors which in substance reveal:

Jurors Howard Davis and Johnson state that they had a full discussion on the sanity issues but they do not recall hearing any juror make any statement about the character or ability of England, Folsom or Kreimeyer.

Juror Hudnall states that he worked at the Rusk State Hospital and denied making or hearing any statement for or against the character or ability of any of the three witnesses.

Juror Darnell states that any reference by him in the affidavit he gave the appellant that the two jurors who worked at the State Hospital based their comments upon their personal knowledge of the three witnesses was in error because he meant that it was their personal observation of them; and that he did not know what the word "credence" means.

No statement is made about Dr. Kreimeyer in the affidavits of Jurors Richards, Dear and Homer Davis.

Juror Musick denies that he knew England, Folsom or Kreimeyer or that he made any statement discrediting them. He further stated: "I do recall Mr. Westbrook stating that Dr. Kreimeyer was an arrested TB patient and that, as far as he knew he was a good doctor."

Juror Westbrook, the foreman of the jury, in his affidavit given to the state relates that on the issue of sanity there was some comment by the jurors as to what they thought of the testimony of England, Folsom, and Kreimeyer but that the comments did not affect his decision. In referring to the affidavit he gave the appellant he states that it does not convey the complete expression of the facts as he related them but he does not point out the errors or mistakes.

On the hearing Juror Darnell, while testifying for the appellant, identified and examined his affidavit which is attached to appellant's motion and stated that in substance it was true and correct. He further testified:

"Q. There was no doubt in your mind as to the bolstering statement of Dr. Kreimeyer's testimony, as to who made that, was there; the statement as to his being an arrested TB case and being a good man and excellent doctor and things of that nature?

"A. No, sir.

"Q. You recall that Mr. Henry Westbrook (foreman) said that?

"A. Yes, sir."

\* \* \* \* \* \*

"Q. Did you also consider the statement made by Mr. Westbrook relative to Dr. Kreimeyer?

"A. Yes, sir."

Juror Westbrook testified that he told the jury that he knew Dr. Kreimeyer but had

no personal knowledge of him, and that he told the jury that from other people who knew him and worked with him, he understood that Dr. Kreimeyer was a good man, a good physician and an arrested TB case.

Jurors Musick and Hudnall, testifying for the state, stated that they worked for the Rusk State Hospital, and that during the deliberations of the jury they did not make or hear any statement by any juror based upon his personal knowledge which bolstered or discredited any of the witnesses England, Folsom or Kreimeyer.

Both parties introduced their respective affidavits into evidence. The supporting affidavits and the evidence adduced on the hearing pertaining to the statements of the ability and credibility of the witnesses England, and Folsom raised an issue of fact.

Juror Westbrook not only occupied a strategic position by being foreman of the jury, he also was the vice-president of a local bank where Dr. Kreimeyer was a customer. On the hearing, the change in Westbrook's testimony from the affidavit he gave to appellant is found in the source of the information of the merits he accredited to Dr. Kreimeyer. In the affidavit he states that he personally knew him and his qualifications as a man and a physician and the reason he was working at the State Hospital. Whereas on the motion for a new trial he testified that he knew Dr. Kreimeyer but that he understood from other people who knew him personally and worked with him that he was a good man, a good physician and an arrested TB case.

The issues of insanity and punishment had not been settled by the jury when the statements complained of were made.

The evidence shows that the jury received new and other testimony during their deliberations which bolstered and vouched for the credibility and ability of a material witness for the state which was calculated to prejudice the rights of the appellant and calls for a reversal. Art. 753, Subd. 7,

Vernon's Ann.C.C.P.; 42 Tex.Jur. 409, Sec. 323; 1 Branch 2d 562, Sec. 587; Holland v. State, 107 Tex.Cr.R. 582, 298 S.W. 898; Stone v. State, 116 Tex.Cr.R. 319, 31 S.W. 2d 822; Scott v. State, 171 Tex.Cr.R. 568, 352 S.W.2d 726.

For the reason pointed out, the judgment is reversed and the cause remanded.

Opinion approved by the Court.