**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Orrin Scott REED, Defendant-Appellant.**

**No. 15748.**

United States Court of Appeals
Seventh Circuit.

Feb. 9, 1967.

Knoch, Circuit Judge, dissented.

Leonard V. Campanale, Mishawaka, Ind., for appellant.

Alfred W. Moellering, U. S. Atty., Joseph F. Eichhorn, Asst. U. S. Atty., Kenneth P. Fedder, Asst. U. S. Atty., South Bend, Ind., for plaintiff-appellee.

Before KNOCH, KILEY and FAIRCHILD, Circuit Judges.

KILEY, Circuit Judge.

Reed was convicted, together with alleged accomplice Billy Ray Silvers, of bank robbery and placing the life of a bank employee in jeopardy by using a dangerous weapon. 18 U.S.C. § 2113(d). The jury returned separate verdicts of guilty as charged as to each defendant. Judgments were entered on the verdicts of guilty, and each defendant was sentenced to fifteen years imprisonment. Both appealed,[1] but we have before us here only Reed's appeal. We reverse and remand for a new trial.

Two men robbed the Citizens Bank of Michigan City, Indiana, Rolling Prairie Branch, on December 15, 1965. Informations against Silvers and Reed were filed on January 3 and January 21, 1966, respectively. The cases were consolidated for trial under Fed.R. Crim.P. 13, and proceeded to trial after denial of Reed's request for a separate trial.

Reed's principal contention is that he was prejudiced by references to his criminal record because his credibility was not subject to attack.

An Indiana state trooper, called as a government witness, testified that during the investigation he went to the home of the bank employee whose life was put in jeopardy during the robbery. The following testimony ensued:

Q. What was the purpose of your being in the * * * residence on the 17th of December?

A. I received two mug shots from one of our detectives at the prison and he requested that I show them to the * * * [employee and his family].

Q. You say mug shots, what is that?

A. They are photographs of former inmates of the state prison.

During cross-examination several minutes later, the trooper again stated the source of the photographs to be the state prison. One of these "mug shots" pictured Reed's codefendant, Silvers.

---

1. Silvers' appeal has been argued and its disposition is pending. United States v. Silvers, No. 15740.

Shortly after this testimony, another government witness, the Sheriff of La-Porte County, identified government exhibit 10 as "a mug shot of Orrin Scott Reed." On cross-examination, the sheriff testified that he showed pictures of Reed and Silvers to the bank employee and his family along with eight or ten "other" photographs from the Indiana State Prison.

The bank employee's wife, testifying for the government, was asked on cross-examination if there was a reason why the state trooper brought two pictures to her the day after she had reviewed three or four hundred photographs. She responded that "they had some pictures from the prison they hadn't shown us."

■■■■ We hold that the testimony with respect to the "mug shot" of Reed taken in prison vitiated his right to be presumed innocent until proven guilty and was prejudicial error.[2] Repeated objections to this testimony were sustained, but the testimony remained. This testimony made the difference between the trial of a man presumptively innocent of any criminal wrongdoing and the trial of a known convict. His right not to take the stand in his own defense was substantially destroyed. His past record could not have been directly shown by the prosecution as part of its case to prove bad character since Reed's character was not in issue. The testimony did this indirectly.

The characterization of the photographs as "mug shots" taken in prison had the same effect as the penitentiary notations on photographs and the descriptive testimony concerning them held to be prejudicial in United States v. Harman, 349 F.2d 316 (4th Cir. 1965). In remanding for a new trial, the court in *Harman* said it doubted that anything the judge might have said could have removed the prejudice created by the pictures and noted that he had not mentioned them in his instructions. Id. at 320. In the case before us the district court made no specific mention of the photographs in its instruction upon identification. It did instruct generally upon the right of each defendant to have his guilt determined solely by evidence of his own "acts, statements and conduct" relevant to the crime charged, and upon the presumption of innocence. But we think the instruction could not erase the prejudice generated in Reed's trial. Barnes v. United States, 365 F.2d 509 (D.C. Cir. 1966). Cf. United States v. Magee, 261 F.2d 609, 612 (7th Cir. 1958).

This prejudicial error was aggravated by further testimony of Reed's criminal record. Immediately after the sheriff's reference to Reed's "mug shot," he testified that he had known Reed "personally" for about eleven years. The prosecutor, in questioning Reed's ex-wife as a government witness, asked whether she saw Reed in early December. She answered, "It wasn't too long after he was released from prison." And an FBI agent testified that a few days after the robbery he asked Silvers if he knew Reed, and that Silvers said "that he had not seen Reed since *he* had escaped." (Empha-

2. Although our holding is directed to the prejudice caused by the accompanying testimony, we point out that there is grave risk in the introduction of photographs where other evidence is produced or available to show the accused is the person who committed the crime charged. The character of the pictures themselves may carry prejudicial implications, through police notations or the appearance or pose of the accused in the photograph. Advanced law enforcement techniques will, in many instances, assure evidence to corroborate identification at the trial by an eyewitness (e. g., prior identifications by the witness through composite drawings or descriptive statements, or at "line-ups" or preliminary proceedings; or circumstantial evidence obtained by scientific methods or otherwise). Where the existence of other evidence makes the use of photographs unnecessary, and there is no other reason for their use, their use, in itself, may imply that their purpose in evidence is to indicate to the jury that the accused has a history of convictions or arrests. In determining the relevancy of photographs, the balance of the possibility of prejudice as against the necessity of their use is one factor to be considered by the trial court. See note 3 infra.

sis added.) That Reed was a convict was now emphasized, and if the jury took the FBI agent's testimony of escape, as it well might have, to mean that it was Reed who had escaped, the prejudice was compounded and Reed became an escaped convict. The fact that it was Silvers who had escaped was developed later. But first impressions are prone to remain, and here the first impression may have added to the already ugly image the "mug shot" of Reed created for the jury.

■ We need not and do not reach the question of the admissibility of the photographs themselves or of evidence of prior extrajudicial identification through them. We observe, however, in aid of the new trial we order, that the introduction of this evidence over objection furnished the occasion for the colorful but prejudicial statements by government witnesses. The admissibility of this evidence at Reed's new trial should depend on the circumstances in which it is brought forth.[3]

■ Before the opening arguments at the trial, Reed's attorney asked that he be given a separate trial because Silvers' insanity defense would introduce matter prejudicial to Reed. When the trial judge denied Reed's request for a separate trial, he had no certain knowledge of Silvers' defense of insanity. But the record supports Reed's claim of prejudice. For that reason, we think Reed's new trial should be separate in the event that Silvers is granted a new trial by this court in the disposition of his appeal.

Reed contends that the court erred in admitting a photocopy of the bank's Federal Deposit Insurance Certificate because it was not properly authenticated. We express no view on this point, but we think this issue can be avoided at Reed's new trial by use of a certified photocopy (unless the original certificate is used) and appropriate testimony that the insurance is still in effect.

Reversed and remanded.

KNOCH, Circuit Judge (dissenting).

Reluctantly I find myself in disagreement with my colleagues. Back in 1949, in the case of United States v. Levi, 7 Cir., 177 F.2d 827, 830–833, this Court laid down suitable principles for the determination of harmless error. Judge Duffy speaking for the Court said that we should consider whether or not the evidence of the defendant's guilt was overwhelming. He then went on to quote with approval from Kotteakos v. United States, 328 U.S. 750, 764, 66 S.Ct. 1239, 90 L.Ed. 1557. In that case the Supreme Court had set up a practical standard: if, when all is said and done, the conviction is sure that the error did not influence the jury or had but very slight effect, the verdict should stand. The evidence of the defendant's guilt here was overwhelming. After careful consideration of the record I am left with the sure conviction that the error which so concerns the majority did not influence the jury or, at worst, had but very slight effect. I would, therefore, affirm the judgment of the trial court.

3. Upon objections of relevancy and hearsay to evidence of prior extrajudicial identification, the courts have considered the reliability of the means of the prior identification, the fairness of the manner in which those means were used, the existence of any prejudicial effect, the purpose for which the evidence is introduced (i. e., as substantive evidence or merely as corroborative of a witness sought to be impeached), and whether the witness testifying is the same person who made the prior identification or merely an observer of it. E. g., United States v. De Sisto, 329 F.2d 929 (2d Cir.), cert. denied, 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964); Eidson v. United States, 272 F.2d 684 (10th Cir. 1959); People v. Thompson, 406 Ill. 555, 94 N.E. 2d 349 (1950); Thompson v. State, 223 Ind. 39, 58 N.E.2d 112 (1944). See Annot., Admissibility of Evidence as to Extrajudicial or Pretrial Identification of Accused, 71 A.L.R.2d 449 (1960); 4 Wigmore, Evidence § 1130 (3d ed. 1940 & Supp.1964); Morgan, Hearsay Dangers and the Application of the Hearsay Concept, 62 Harv.L.Rev. 177, 192 (1948).