**John Edwin MYERS, Plaintiff-Appellant,**

**v.**

**May FRYE, Warden of Illinois State Penitentiary, Respondent-Appellee.**

No. 16289.

United States Court of Appeals
Seventh Circuit.

July 12, 1968.

Myers and a thirteen year old girl companion were arrested in Texas on September 2, 1961, at about 2:00 a. m. and were charged with kidnapping. During the evening of September 3 he admitted to Texas authorities that he had committed one homicide in Texas and two in Illinois. The next afternoon he admitted the Illinois killings to Illinois authorities.

Myers and his juvenile companion were indicted for murder in St. Clair County, Illinois, as to one of the admitted Illinois homicides. Counsel was appointed for Myers and before trial a motion to suppress succeeded in excluding the confessions to the Texas authorities, but .the motion failed with respect to the confession to Illinois authorities.[1]

Two petitions for a change of venue from St. Clair County, based on alleged prejudicial publicity, were denied. A jury found Myers guilty and fixed the penalty at death. Court-appointed appellate counsel for Myers moved to vacate the judgment and sentence of death on the ground that the court had violated Illinois law by denying Myers a hearing in mitigation of sentence. The motion was denied. An appeal to the Illinois Supreme Court resulted in affirmance of the conviction. People v. Myers, 35 Ill.2d 311, 220 N.E.2d 297. The United States Supreme Court denied certiorari, 385 U.S. 1019, 87 S.Ct. 752, 17 L.Ed.2d 557. The petition before us was filed in May, 1967.

The issues raised in this court are (1) whether Myers was denied due process by the denial of a change of venue, (2) whether he was denied due process by the admission at his trial of his confession to Illinois authorities over his objection that the confession was tainted by the involuntary confession to the Texas authorities, (3) whether he was denied a Sixth Amendment right to compel his juvenile companion to testify in his behalf, and (4) whether his right to due process was violated by the state

Joseph Cohn, East St. Louis, Ill., for plaintiff-appellant.

William G. Clark, Atty. Gen., Phillip J. Rock, Asst. Atty. Gen., Chicago, Ill., John M. Karns, State's Atty., St. Clair County, Belleville, Ill., for respondent-appellee; John J. O'Toole, Asst. Atty. Gen., of counsel.

Before KNOCH, Senior Circuit Judge, and KILEY and CUMMINGS, Circuit Judges.

KILEY, Circuit Judge.

This is an appeal from the district court's dismissal of a habeas corpus petition filed by John Edwin Myers, who was sentenced to death for murder in April, 1964, after a jury trial in an Illinois court. We retain jurisdiction, and remand for a limited hearing.

1. See Myers v. State of Texas, Tex.Cr. App., 365 S.W.2d 932. There Myers' conviction was reversed because jurors considered a juror's statements, during deliberations, which buttressed testimony of psychiatric witnesses at the trial.

court's denial of a hearing in mitigation of sentence.

In the district court, in response to a rule to show cause, the state of Illinois relied upon the decision of the Illinois Supreme Court, and the record of the state trial. The district court found on the state court record that the Supreme Court of Illinois had adequately covered the claims of unconstitutionality presented in Myers' petition, and agreed with the "conclusions and ruling" of the Illinois Supreme Court.

The Supreme Court of Illinois detailed the circumstances which are the basis of Myers' claim that the denial of his motion for a change of venue prejudiced the outcome of his trial. Myers argues that these circumstances show that pre-trial publicity permeated the community to such an extent that prejudice from the denial of his change of venue must be presumed. The record of this case shows that the newspapers, radio and television gave extensive coverage to petitioner's case and that apparently 38 jurors out of a panel of 120 had to be excused because they had heard or read something which might affect their judgment in the case.

■ These facts fall far short of those present in the cases upon which Myers relies. In Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751, eight of the twelve jurors who decided the case admitted before trial that they had formed an opinion of defendant's guilt. In Rideau v. State of Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663, the people of Louisiana saw Rideau confess to the sheriff on television. In Estes v. State of Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543, a pre-trial hearing and the defendant's trial were broadcast live on television and radio facilities; and in Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600, no effort was made to insulate the jury from trial publicity, two jurors admitted reading highly inflammatory material, a pre-trial inquest was televised live, and prospective jurors received anonymous letters after pictures of the jurors accompanied by their names and addresses appeared in the press. These differences in facts indicate the probability of prejudicial effect of publicity on the trials in the cases relied on was greater than that present in Myers' case. Moreover, in *Rideau, Estes,* and *Sheppard,* the cases where the Supreme Court evinced a willingness to presume prejudice to the defendant as a result of publicity, conduct engaged in by the state or procedures adopted by the trial judge contributed substantially to the quantity and effect of the publicity surrounding the trial. No such conduct or procedure is present in the record of this case.

During his trial, Myers sought to introduce, as evidence of insanity, letters written by him to his juvenile accomplice. These letters were owned by his accomplice and were in the possession of his accomplice's attorney who refused to produce them in court on the ground that his client would be incriminated by them. After the defendant concluded his case, the state produced a psychiatrist who testified as a rebuttal witness on the sanity issue. Myers then sought to call his accomplice as a surrebuttal witness. The accomplice had been subpoenaed by the state and was present in court but had not been called by the state, since her lawyer advised the prosecutor that she would refuse to testify on Fifth Amendment grounds. The trial court refused to allow Myers to call the accomplice, ruling that no surrebuttal would be allowed.

On appeal, the Illinois Supreme Court found no error in the rulings excluding the letters and refusing the defense permission to call the accomplice. The court concluded that the privilege against self-incrimination had been properly invoked with regard to the letters and also that the accomplice was properly excluded as a witness, since she had indicated that she would refuse to testify if called.

■ Myers argues that these rulings violated his right to compulsory process under the Sixth Amendment as enunciated in Washington v. State of Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.

Ed.2d 1019. In *Washington* a state law which prevented a criminal defendant from calling an accused accomplice as a witness on his behalf was held to violate the Sixth Amendment. The holding in *Washington* was based on the Supreme Court's conclusion that the compulsory process clause is violated by "arbitrary rules that prevent whole categories of defense witnesses from testifying on the basis of *a priori* categories that presume them unworthy of belief." The action of the trial court here in allowing an attorney to refuse to produce incriminatory letters which his client has left in his possession does not fall within the class of rules condemned in *Washington;* nor does the trial court ruling denying Myers the right to call surrebuttal witnesses, or the Illinois Supreme Court ruling that a criminal defendant may not call a witness who has indicated that she will refuse to testify. The Sixth Amendment does not operate to prevent a state from adopting any limitations on defense evidence in criminal trials, but only prevents the adoption of broad arbitrary limitations. The limitations here are neither broad nor arbitrary, and we consequently find no violation of Myers' Sixth Amendment rights.

■ Myers argues that he was denied a hearing on mitigation of sentence and that this denial abridges his constitutional right to due process. The Illinois Supreme Court found that he had been granted an opportunity to speak in mitigation prior to sentencing and that his failure to speak was a waiver of his right to be heard. Myers argues that the record shows that he was not offered a right to be heard in mitigation. We, however, see no need to consider this issue since the United States Supreme Court has said that

> The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before

sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus. It is an error which is neither jurisdictional nor constitutional. Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417.

The dissent in the *Hill* case is based on federal procedural rules and does not contradict the quoted portion of the majority opinion.

Myers argues here, as he did before the Illinois Supreme Court, that his confession made to Illinois authorities subsequent to his confessions to Texas authorities was involuntary and should have been excluded from evidence. In responding to this contention the Illinois Supreme Court noted that the Texas confessions were not admitted into evidence at Myers' Illinois trial.[2] It said, at p. 320 of 35 Ill.2d, 220 N.E.2d 297, it was fully aware of the problems inherent in the admission of confessions where there is a prior involuntary confession. But the court concluded that the evidence of the earlier Texas confession, consisting solely of Myers' testimony, showed that a finding of involuntariness was not necessarily required with respect to the later confession to the Illinois authorities. The court sustained the Illinois trial court ruling admitting the confession as not "manifestly erroneous."

The court recited Myers' testimony in the hearing on his motion to suppress: He was kept in the "drunk tank" at 45 degrees temperature, in light clothing, for some time after his arrest. Before confessing at 6 P.M., he was never advised of constitutional rights, he requested and was denied counsel three times, he was confronted with his crying accomplice while he was being questioned, and he was given little to eat and did not sleep until he confessed. He was never beaten, nor promised leniency, by the Texas authorities, although he was ques-

---

2. In its opinion reversing Myers' Texas conviction of murder, with sentence of death, for the jury misconduct, the Court of Criminal Appeals of Texas, 365 S.W. 2d 932, simply noted. "Two written statements made and signed by appellant [Myers] were introduced in evidence * * * and they show a killing by him without any justification; and * * * were sufficiently corroborated."

tioned persistently. He knew he had the right to remain silent and refused to talk the first two times he was questioned. He signed two confessions for the Texas authorities because, "I got tired of being questioned." After the confessions were signed Myers' interrogation continued until late in the night. The next morning questioning continued until the Illinois authorities arrived and the confession to them took place.

The Supreme Court stated that "* * * it is not clear whether the Texas authorities did not feed him [Myers] or permit him to sleep or whether this was a matter of his own choice. It is also unclear how much of the time between the time he was taken in custody at 2 a. m. and * * 6 p. m. was spent in the drunk tank where he complained of being cold and how much was spent in the interrogation room. * * *" The court concluded that, "At any rate * * * he signed the statement[s] * * * because he was tired of being questioned and not because of any mistreatment." The court presumably thought the uncertainty surrounding the circumstances of the Texas confessions was irrelevant to the question of voluntariness of the Illinois confession since after the earlier confession Myers was fed and permitted to sleep before later confessing to the Illinois authorities at noon the next day.

■ The Supreme Court of Illinois relied on Lyons v. State of Oklahoma, 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481, in sustaining the trial court's holding of voluntariness. That case stands for the rule that a second confession, following an initial involuntary confession, need not be excluded from evidence unless the relation of the earlier and later confession is so close that "one must say the facts of one control the character of the other" so as to make the inference of involuntariness the only reasonable one. P. 603, 64 S.Ct. p. 1213. On the other hand, when "conceded facts" cannot be reconciled with mental freedom to confess or deny guilt the federal court must bear the burden of adjudication regardless of the inference of the state trier of fact. P. 602, 64 S.Ct. 1208.

■ It is possible that if the Texas authorities were to testify in a hearing upon Myers' petition for habeas corpus, it would clearly be shown that Myers was in the "drunk tank" for a substantial period of time; that he was not fed or permitted to sleep; that he was confronted with his crying accomplice when being questioned; that he requested and was denied a lawyer three times; that he signed the confession because he "got tired of being questioned"; and that there was no significant break in the stream of events between the Texas and Illinois confessions. In short, a hearing on the voluntariness of the Illinois confession could disclose a totality of circumstances that would require the district court to conclude that, as a matter of law, "an inference of guilt based in part" upon Myers' confession to the Illinois authorities was a denial of Myers' Fourteenth Amendment rights.

We hold therefore that the facts were not fully developed in the state court proceeding, Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770, so as to render the Illinois decision of voluntariness binding on the district court, and that the district court should conduct an evidentiary hearing for determination of the facts surrounding the Texas confessions and the effect of those facts, under the principles of Clewis v. State of Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423, on the confession to Illinois authorities.

We retain jurisdiction and remand to the district court for the limited evidentiary hearing described above, with directions to the district court to certify to this court the evidence heard together with the district court's findings and conclusions.

Remanded for an evidentiary hearing.

KNOCH, Senior Circuit Judge (dissenting).

The Illinois Supreme Court was evidently satisfied that there was no con-

tinuing effect in the circumstances (whatever they were) surrounding the confession that was made to the Texas authorities. Further, although the police officers who witnessed the confession to the Texas authorities did not testify at the hearing on the motion to suppress the confession made at a later time to the Illinois authorities, the evidence of the statements made by the defendant to the Illinois authorities in response to query as to his prior treatment and the testimony of those Illinois authorities concerning the appearance of the defendant all operate to weaken the "conceded facts" of which the majority speak. These "conceded facts" are such as can easily be reconciled with mental freedom to confess or deny guilt. I would affirm the decision of the District Court.