UNITED STATES of America,
Plaintiff-Appellee,

v.

Burnell ROBINSON, Defendant-Appellant.
No. 16417.

United States Court of Appeals
Seventh Circuit.

Jan. 10, 1969.

Burnell Robinson, Ronald Alwin, Chicago, Ill., for appellant.

Thomas A. Foran, U. S. Atty., Michael P. Siavelis, Asst. U. S. Atty., John Peter Lulinski, Michael B. Nash, Asst. U. S. Attys., of counsel, for appellee.

Before CASTLE, Chief Judge, and FAIRCHILD and CUMMINGS, Circuit Judges.

CASTLE, Chief Judge.

This appeal is from defendant's conviction, upon a jury verdict of guilty, of armed robbery from a postal station, in violation of 18 U.S.C. § 2114. Defendant's main contention on appeal is that various references during the course of the trial to identification of defendant by use of "mug shots" violated defendant's constitutional rights and require reversal of the judgment of conviction.

The first mention of "mug shots" came during the prosecutor's opening statement when he told the jury that the Government expected to prove that, following the robbery, the owners of the postal station went to the Joliet, Illinois Police Station where they "looked at what the Police Department calls mug shots [and] picked out [defendant's] picture as the man who robbed him there." At this point, after denying a motion for mistrial, made by defense counsel at a side-bar conference, the trial court instructed the jury as follows:

"* * * Mr. Fohrman is properly concerned that you not misinterpret Mr. Jalovec's reference to 'mug shots.' You understand that whether it is the local police, or the FBI, or what have you, they have a whole lot of pictures of a lot of people. Because they have somebody's picture does not mean that this man has ever committed a crime before or since. They have pictures of people of all kinds and descriptions

and mug shots do not mean that this is evidence of a man having previously committed a crime or that he is even suspected of committing a crime. They are pictures which the law enforcement agencies have for purposes of identification. They have them of all kinds of people, including me as a matter of fact, because anybody who has worked for the federal government has his fingerprints on file with the FBI and his picture is on file, for example.

"So you understand there is no connotation of guilt at all by virtue of the fact that some pictures were in the possession of the police or Mr. Jalovec says they were. * * * *"

Later in the trial, during the Government's case in chief, both prosecution witnesses testified that they had looked at a "mug file," "picture file," "photographs of suspects," or "photographs" at the police station and also at a "line-up."

The defendant, who did not testify at trial, claims that the references to "mug shots" created an impression in the minds of the jurors that he had a prior criminal record. Consequently, defendant argues, since his character was not in issue, the presumption of innocence and defendant's right not to testify were destroyed, in violation of the Fifth Amendment. Defendant alleges that "the common juror is likely to attribute a connotation of criminality [either arrest or conviction] to the subject shown in a 'mug shot'," and relies mainly on United States v. Reed, 376 F.2d 226 (7th Cir. 1967), to substantiate his claim of unconstitutionality.

In *Reed*, the defendant was convicted of bank robbery and placing the life of a bank employee in jeopardy by using a dangerous weapon. During the direct examination of a Government witness, a state trooper, the following dialogue occurred:

A. "I received two mug shots from one of our detectives at the prison and he requested that I show

them to the * * * [bank employee and his family].

Q. "You say mug shots, what is that?

A. "They are photographs of former inmates of the state prison."

During cross-examination, this same witness again stated the source of the photographs to be the state prison. Another Government witness, the County Sheriff, identified a Government exhibit as a "mug shot" of the defendant, and on cross-examination stated that he showed pictures of the defendant to the bank employee, along with "other" photographs from the Indiana State Prison. Another Government witness also mentioned the source of these pictures. In reversing Reed's conviction, this Court stated:

"We hold that the testimony with respect to the 'mug shot' of Reed taken in prison vitiated his right to be presumed innocent until proven guilty and was prejudicial error. * * * This testimony made the difference between the trial of a man presumptively innocent of any criminal wrongdoing and the trial of a known convict. His right not to take the stand in his own defense was substantially destroyed. His past record could not have been directly shown by the prosecution as part of its case to prove bad character since Reed's character was not in issue. The testimony did this indirectly.

"The characterization of the photographs as 'mug shots' taken in prison had the same effect as the penitentiary notations on photographs and the descriptive testimony concerning them held to be prejudicial in United States v. Harman, 349 F.2d 316 (4th Cir. 1965)." 376 F.2d at 228.

We also held that this prejudicial error was aggravated by further testimony of Reed's criminal record by other witnesses.

We do not think our holding in *Reed* compels reversal in the instant

case. Initially, the prejudicial testimony in *Reed* was much more harmful than in the case at bar in that the "mug shots" were repeatedly referred to as having been taken in prison. Along with other harmful testimony during Reed's trial, this left the jury with no doubt of the existence of Reed's prior criminal record.[1] In the instant case, on the other hand, there was no mention of prior criminal activities. The "mug shots" in the case at bar were identified as being at the police station, not at a penal institution, and the trial court's comprehensive instruction to the jury, made immediately after the first defense objection, dissipated any innuendo which could have been drawn from the use of the term "mug shots" standing alone. We are not prepared, on the facts of the record before us, to extend the rule of *Reed* to cover a situation involving a mere reference to "mug shots" unaccompanied by anything suggesting past criminal activities, and where the trial judge gave a comprehensive instruction to the jury cautioning them not to draw any inference of criminality from the term "mug shots."

We also hold that any reliance by defendant on United States v. Dichiarinte, 385 F.2d 333 (7th Cir. 1967), is misplaced. In that case, while recognizing the probable implication that photographs in the hands of the police "are not selected at random from the public and that some unfavorable history is present," we held that reference to identification by photographs of the defendant at the office of the Bureau of Narcotics did not constitute prejudicial error since the jury is presumed to heed the instructions given by the court that the defendant is presumed innocent.[2]

In *Dichiarinte*, we distinguished *Reed* by stating, "* * * there the offensive testimony was that a photograph of defendant had been taken in prison, thus directly asserting a prior conviction of crime." 385 F.2d at 337. Thus as with United States v. Schwartz, 398 F.2d 464, 470 (7th Cir. 1968), *Dichiarinte* is factually quite distinguishable from *Reed*, and its holding actually supports the Government's position.

Defendant's next contention is that the trial court's instruction compounded the alleged error of the prosecutor's reference to "mug shots." Since we hold that the prosecutor's reference did not constitute error, there can be no compounding of it. We also hold that there was no independent error in the instruction. Defendant contends that the language of the instruction created a distinction in the minds of the jurors between the "ugly image" of "mug shots" and mere "pictures." Defendant argues in his brief, "Had any jurors missed the reference of the prosecutor to mug shots, they could not have overlooked the lengthy instruction of the trial judge." Defendant further claims that the trial judge's reference to the fact that his own "picture" was on file with the Federal Bureau of Investigation suggested to the jurors that only people with criminal records have their "mug shots" on file with the *local police*.

We disagree with defendant's conclusion on this point. As we stated in *Dichiarinte*, 385 F.2d at 337: "But the possible reasons for [the presence of' defendant's photograph in the hands of the police] are varied, and the jury probably understands that, and pays heed to the instructions of the court that the defendant is presumed innocent." The trial judge's mention of his own picture being on file with the F. B. I. was merely an example to illustrate his prior statement that the police "have pictures of people of all kinds and descriptions and mug shots do not mean that this is evidence of a man having previously committed a crime or that he is even suspected of committing a crime." In the instant case, the instructions by the

---

1. In *Reed*, a Federal Bureau of Investigation agent also testified that the defendant had escaped from prison. 376 F.2d at 228.

2. In *Dichiarinte*, we reversed defendants' convictions on other grounds.

trial court, rather than compounding or creating error, removed any implication of prior criminal activities from the Government's references to "mug shots." Thus, although we believe the terminology used by the Government was ill-advised and might call for reversal in some circumstances, such as in *Reed*, we hold that in the instant case it did not constitute reversible error.

Defendant's next contention is that the evidence of the extra-judicial identification of the defendant through photographs violated his Sixth Amendment right to confront the witnesses against him. Defendant analogizes the decisions of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. California, 388 U.S. 263, 88 S.Ct. 1951, 18 L.Ed.2d 1178 (1967)— which hold that an accused is entitled to counsel at every "critical stage of the prosecution," and that a post-indictment lineup is such a "critical stage" (see 388 U.S. at 236–237, 87 S.Ct. 1926)[3]—to photographic identification. Thus, defendant argues that, in order to protect the accused's right to a fair confrontation of his accusers, as was deemed necessary by presence of counsel at a lineup, a person is likewise entitled to similar protection regarding identification by use of photographs. Defendant on brief recognizes that presence of counsel at photographic identification would be "necessarily impossible, since the accused is probably at large at the time"; but defendant argues that all testimony regarding such identification should be excluded from the trial. There is no contention that the photographic identification in the instant case was overly suggestive, and indeed the evidence would not support such a contention.

■ We believe this argument of defendant was recently settled by the Supreme Court in Simmons v. United States, 390 U.S. 377, 383–384, 88 S.Ct.

967, 19 L.Ed.2d 1247 (1968). Ruling on a similar argument made by the defendant in that case, the Court noted the dangers inherent in photographic identification (390 U.S. at 383, 88 S.Ct. 967), but went on to reject the defendant's contention:

"Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 390 U.S. at 384, 88 S.Ct. at 971.

Thus, the Supreme Court not only approved of initial identification by photographs, but encouraged testimony at trial regarding such identification as a safeguard for the defendant. We therefore reject defendant's contention on this point.

Lastly, we do not deem this case to be such as to require reversal under our supervisory powers. For the foregoing

---

3. Although a line-up was also used in the instant case, this procedure's validity is not challenged since *Gilbert* and *Wade* have been held not to apply retroactively. Stovall v. Deno, 388 U.S. 293, 296, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

reasons, the judgment of conviction is affirmed.

The Court expresses its appreciation to Attorney Ronald P. Alwin, a member of the Chicago, Illinois bar, for his excellent services on appeal as court-appointed counsel for the defendant.

Affirmed.