**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Russell Lee SCOTT, Defendant-Appellant.**

**No. 73–1499.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 23, 1973.

Decided Feb. 26, 1974.

William M. Coffey, Milwaukee, Wis., for defendant-appellant.

David J. Cannon, U. S. Atty., David B. Bukey, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before KILEY, Senior Circuit Judge, CAMPBELL,* Senior District Judge, and GRANT,** Senior District Judge.

KILEY, Senior Circuit Judge.

Defendants Scott and Hampton were convicted by a jury of stealing two RCA color television sets from an interstate shipment in violation of 18 U.S.C. § 659. Scott alone appeals from the judgment of conviction. We affirm.

The television sets were taken from a common carrier truck driven by Kaul, who testified for the government. He testified that at approximately 12:30 p. m. on September 13, 1971, a bright, clear day, he saw two men pushing card-board cartons under the tandems of a trailer located on the premises of his employer, Bruce Motor Freight. One man was entering an old model brown Lincoln Continental which had television sets in the trunk. Kaul approached to within 25 feet of them and asked what they were doing. One of the men—later identified by Kaul as Scott—turned, faced Kaul and said, "Don't worry about it." The car was then backed to about three feet from Kaul before being driven off. The incident lasted about 30 seconds.

On the same day, Kaul described, to police, the man he spoke to as being 5'8" to 5'10" tall, 18 to 20 years old, having an Afro-style haircut, and wearing a tan windbreaker. Kaul was shown police photographs and recognized no one.

On September 14 and 24, Kaul viewed more police photographs. On each occasion he pushed aside Scott's photograph, indicating, respectively, that it "most closely resembled" the man to whom he had spoken, and that it "resembled the man the most of any that he had" and that "it looks very much like him."[1] Immediately after the second occasion, Kaul saw Scott, young and black; and a white man, a police detective; through a one-way glass to a room.

At trial the district court denied Scott's motion to suppress Kaul's testimony as to identification, holding that although the one-man showup was defective, the government had clearly and convincingly proven an independent basis for Kaul's in-court identification.

On cross-examination, Kaul said he had not positively identified Scott in the photographs because "he wanted to be sure" and that the individual at the crime scene had bushier hair. The police photograph of Scott was then received in evidence, without objection.

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

** Senior District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation.

1. At an evidentiary hearing held prior to trial, Kaul testified that he did not make a positive identification at this time due to a fear that he would condemn the wrong person.

**300**

Scott's counsel did object when the court permitted the jury to take the photograph for use during their deliberation. The district court overruled the objection.

## I.

Scott contends that the district court erred in denying his motion to suppress Kaul's in-court identification—even though the "lineup" identification was invalid[2]—on the ground that the government proved by clear and convincing evidence an independent basis for the identification. We find no merit in this contention.

■ Where there has been an illegal lineup or showup, subsequent in-court identification is not *per se* invalid and need not be suppressed on Sixth or Fourteenth Amendment grounds, if the government has demonstrated an independent basis for the identification by clear and convincing evidence. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). See recent cases of this circuit: United States v. Ganter, 436 F.2d 364 (7th Cir. 1970) (defective hospital showup); United States ex rel. Harris v. Illinois, 457 F.2d 191 (7th Cir. 1972) (illegal lineup without counsel); United States v. Pigg, 471 F.2d 843 (7th Cir. 1973) (observation of defendant at a removal hearing).

■ The record before us discloses that Kaul's in-court identification was

based upon his 30-second observation, including a face-to-face conversation, on a clear, bright day.[3] Kaul made no identification of another person prior to lineup, nor can it be reasonably said that he failed to identify defendant Scott in the police photographs. Kaul's pre-showup description of Scott was substantially correct.[4] Only eleven days lapsed between the offense and the lineup identification, and in that period Kaul had on two occasions singled out Scott's photograph. Kaul's reluctance to positively identify Scott in the photographs is understandable as the normal reaction of a person who feared possible condemnation of the wrong man, and could have enhanced the reliability of the identification.[5] For these reasons —which satisfy the several criteria of evaluating reliability of an independent identification set out in *Wade, supra,* and *Gilbert, supra*—we hold that the government's evidence of an independent basis for the in-court identification was clear and convincing.[6]

## II.

The defendant next contends that it was error for the trial court—over defendant's objection—to permit the jurors to have in their possession during the course of their deliberation the police photograph of Scott. A police identification number and the notation "Police Mil. Wis." appear on the face of the photograph. We think that the ruling was constitutionally erroneous. We find, nevertheless, that on this record

2. This was undisputed.

3. In Long v. United States, 137 U.S.App.D.C. 311, 424 F.2d 799 (1969), the court held, as a sufficiently independent source, an identification made by a robbery victim who had the opportunity to observe a robber at close range in daylight.

4. The only apparent discrepancy was the existence of a scar on the left side of Scott's neck which Kaul did not include in his description to the police. However, Kaul testified that he had observed Scott only from the front and right side.

5. Kaul testified at pre-trial hearing that when he viewed Scott's photograph he had

been about 75% certain that "that was the man." Apparently the 25% uncertainty was attributable to Kaul's recollection that the individual he identified as Scott had a "bushier head of hair" at the crime scene than he did in the picture.

6. Defendant's argument that a witness should be *per se* disqualified when there has been a prior illegal showup is without merit. The only case cited to support such a proposition is Allen v. Moore, 453 F.2d 970 (1st Cir. 1972). In dictum, the court found improper the use of one-way glass lineups by police, but held that an independent basis of identification had been demonstrated through testimony of witnesses.

the error was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

It is true that in United States v. Harman, 349 F.2d 316 (4th Cir. 1965), and Barnes v. United States, 124 U.S. App.D.C. 318, 365 F.2d 509 (1966), the courts held that admission, respectively, of penitentiary and police photographs into evidence was reversible error. And we similarly held that testimony with respect to a "mugshot" of defendant taken in prison destroyed his right not to take the stand in his own defense and constituted reversible error. United States v. Reed, 376 F.2d 226 (7th Cir. 1967).

■ The notation on Scott's photograph indicates prior police custody, and since it was before the jury during the course of their deliberation, it could have been a source of prejudice, as in *Reed, supra,* where repeated reference to the "mugshot" was held to be reversible error. The photograph of Scott is not a "mugshot" indicating confinement in a prison, as in *Harman,* and *Reed.* Nevertheless, we think the photograph of Scott containing a police identification number indicates prior "trouble" with the law, and we hold that its submission to the jury during its deliberation was error.[7] We do not hold that Scott's photograph should not have been viewed by the jury at all. We believe no error would have been committed in allowing the jury to view the photograph once during trial for the limited purpose of dispelling jurors' doubts as to the reason for Kaul's initial hesitancy to make positive identification of Scott on the basis of the police photograph. That limited viewing of it by the jury would cause little, if any prejudice to defendant.

United States v. Gimelstob, 475 F.2d 157 (3rd Cir. 1973).

While the district court committed constitutional error in permitting the photograph to go to the jury during deliberation, and while defendant Scott may have suffered prejudice as a result, we find this error to be harmless beyond a reasonable doubt. Also, the unobjected introduction of the photograph into evidence, and proper use of it in examining Kaul before the jury, diminished what prejudice might have been generated by permitting the jury to have the photograph during its deliberation.

Furthermore we think the evidence of Scott's guilt was overwhelming. The identification of Scott by Kaul is most persuasive. And there is the additional incriminating fact, stipulated to at the trial, that Scott had driven the Lincoln Continental the day of the crime. Also in evidence was a sales agreement with a used car dealer, for that Lincoln Continental, bearing Scott's name.

The decisions of the courts in *Harman* and *Barnes,* and of our court in *Reed, supra,* were prior to, and did not have the benefit of, the holding in Chapman v. California, *supra,* that permits affirmance of a conviction—even over constitutional error—if the reviewing court can declare a belief that the error was harmless beyond a reasonable doubt, and that "it did not contribute"[8] to Scott's conviction. The *Scott* record contains, in our view, overwhelming evidence[9] that Scott was the man Kaul saw and spoke to during commission of the offense, and we can declare our belief that the district court's permitting the photograph to go to the jury during deliberation was harmless beyond a reasonable doubt.

Affirmed.

---

7. Our decisions in United States v. Robinson, 406 F.2d 64 (7th Cir. 1969), and United States v. Dichiarinte, 385 F.2d 333 (7th Cir. 1967), holding verbal reference to a defendant's mugshot during trial was not prejudicial, do not militate against this conclusion.

8. Chapman v. California, 386 U.S. 18, 26, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

9. See United States v. Sanders, 322 F.Supp. 947 (E.D.Penn.1971), in which a district court held that even if a black and white photo purporting to be that of the defendant were inadmissible, submission of it to the jury was not reversible error, in view of the fact that there was overwhelming evidence connecting defendant to the crime.