**STATE OF WISCONSIN ex rel. Thomas MONSOOR, Petitioner-Appellant,**

v.

**John GAGNON, Respondent-Appellee.**

No. 73-1937.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 21, 1974.

Decided March 19, 1974.

Patrick R. Doyle, La Crosse, Wis., for petitioner-appellant.

Robert W. Warren, Atty. Gen., Robert D. Martinson, Asst. Atty. Gen., Madison, Wis., for respondent-appellee.

Before CASTLE, Senior Circuit Judge, CAMPBELL, Senior District Judge,* and JAMESON, Senior District Judge.**

JAMESON, Senior District Judge.

Thomas Monsoor, an inmate of the Wisconsin Correctional Institution, has appealed from a dismissal of his petition for a writ of habeas corpus in which he claims that he is in custody in violation of the United States Constitution.

Following a jury trial in the circuit court of La Crosse County, Wisconsin, Monsoor was convicted of selling marijuana, in violation of Wis.Stats. 161.-30(2) and 161.30(12)(d), and was sentenced to two years imprisonment.

The facts are undisputed.[1] The state's case against Monsoor rested upon

---

\* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

\*\* Senior District Judge William J. Jameson of the District of Montana is sitting by designation.

1. The parties filed a stipulation of facts and a copy of the transcript of the state court proceedings. The district court made findings of fact essentially as herein set forth.

the testimony of Kim Kasabuske, an agent of the Wisconsin Department of Justice. Kasabuske testified that he worked as an undercover agent wearing a disguise and using an assumed name; that he tried to appear to be a member of the drug oriented community; that on March 16, 1971, while working with an informer named Bowman, he purchased a quantity of marijuana from Monsoor at Monsoor's residence. Bowman did not testify at the trial. Over objection, Kasabuske testified that the purchase was initiated by a March 16 telephone call from Bowman to Monsoor. Kasabuske related Bowman's side of the telephone conversation as follows:

"I can't recall it word for word, but he said, 'Hi, Tom' and made some small talk, 'What's up,' something like that and then he asked, 'Do you have anything?' and at this point he turned to me and said, 'He's got some grass.' I said, 'Fine.' He turned back to the telephone and he said, 'We'd like some. Can I bring a friend over?' and he said, 'Well, we'll be right over' and hung up."

Monsoor's defense was entrapment, based upon his claim that Bowman and Kasabuske had persuaded him to sell them marijuana by playing on his sympathetic instincts, that the marijuana which he sold actually belonged to someone else and that he never made any other sales, although persistently solicited by Bowman and Kasabuske to do so.

Monsoor took the stand on his own behalf, and also called as witnesses five of his friends. The defense witnesses testified that on numerous occasions Monsoor had refused to sell marijuana to Bowman, although Bowman had persistently pleaded with him to do so. In addition, defense witness Robert D. Lyons, Jr., a former roommate of Monsoor, testified that he was the person who received the telephone call from Bowman on March 16, 1971.[2] Lyons related the telephone conversation as follows:

"[Bowman] just asked 'Is Tommy home.' I said no. He wanted to find a friend of Tom's and he asked me if this friend had any grass. I said, 'I don't know.' He asked me for the phone number and I said, 'I don't know the phone number.' He asked me if I had any grass and I said no. He said, 'Does Tommy have any grass,' and I said, 'Why ask me. If you want some ask him for yourself' and that was the extent of it right there and I hung up."

On cross-examination the prosecutor questioned Lyons extensively about his previous criminal record. At one point he asked Lyons whether he had ever smoked marijuana at Monsoor's residence or whether he knew anyone else who had done so. Lyons refused to answer these questions, citing the Fifth Amendment. The prosecutor then moved that Lyons' entire testimony be stricken, on the ground that Lyons was refusing to be cross-examined. The trial court granted the motion over the objection of Monsoor's counsel.

Monsoor's conviction was affirmed by the Supreme Court of Wisconsin, State v. Monsoor, 56 Wis.2d 689, 203 N.W.2d 20 (1973). The court held that "the trial court abused its discretion in striking the entire testimony of Robert Lyons",[3] but declined to reverse on the

2. Monsoor denied having received any telephone call from Bowman on March 16.

3. The court followed United States v. Cardillo, 316 F.2d 606, 611 (2 Cir. 1963), cert. denied, 375 U.S. 822, 84 S.Ct. 60, 11 L.Ed.2d 55 (1963), and Coil v. United States, 343 F. 2d 573, 579–580 (8 Cir. 1965), cert. denied, 382 U.S. 821, 86 S.Ct. 48, 15 L.Ed.2d 67 (1965), which hold that direct examination testimony should not be stricken where the privilege against self incrimination is invoked upon cross-examination with respect to collateral questions which relate solely to the credibility of the witness and are otherwise immaterial to the subject matter of the direct examination testimony. The cases present an exception to the general rule that the striking of direct testimony is permissible where a witness refuses to be cross-examined. See McCormick, Evidence § 19 (2d Ed. 1972).

ground that the trial court's error was not such as to have "probably affected the result of the trial". *Id.* at 27.

Two questions are presented on this appeal: (1) whether the striking of Lyons' testimony denied Monsoor his right to have compulsory process for obtaining witnesses in violation of the Sixth and Fourteenth Amendments, and (2) if so, whether the constitutional error was harmless beyond a reasonable doubt.

In Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) the Court held that a state law which prevented a defendant from calling an accused accomplice as a witness was in violation of the Sixth Amendment. The district court recognized that *Washington* held that the constitutional right to compulsory process is applicable to the states under the Fourteenth Amendment, but reasoned that this right does not extend to the testimony of a witness and merely affords a defendant the right to secure his attendance at the trial.[4] We do not believe the decision in *Washington* can be so limited. The Court said in part:

> "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prose-

cution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law." 388 U.S. at 19.

Moreover, in the concluding language of the opinion the Court observed that: "The Framers of the Constitution did not intend to commit the futile act of giving to a defendant the right to secure the attendance of witnesses whose testimony he had no right to use." *Id.* at 23.[5]

█ It is true, as appellee argues, that a state may adopt limitations on defense evidence in criminal trials; but consistent with the constitutional guarantees of compulsory process and a fair trial, these limitations may not be arbitrary. See Myers v. Frye, 401 F.2d 18, 21 (7 Cir. 1968).[6] Under *Washington* a defendant may not, consistent with the Sixth and Fourteenth Amendments, be arbitrarily deprived of competent testimony which is relevant and material to the defense.[7] We hold that it is constitutionally impermissible to strike relevant and competent direct examination testimony where a defense witness on cross-examination invokes the privilege against self incrimination with respect

---

4. The court stated:

   "I am not persuaded that the parameters of the right to compulsory process extend to the testimony offered by the witness. Once the witness's attendance has been secured, and he has taken the stand, the accused has been afforded his right to compulsory process. If the court subsequently strikes all or a portion of the witness's testimony, the court's action must be evaluated as any other evidentiary ruling made during the course of trial as to its effect upon the accused's due process right to a fair trial."

5. See also Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973) where the Court noted that "Few rights are more fundamental than that of an accused to present witnesses in his own defense."

6. It is well settled that "when a state procedural rule comes into conflict with a fundamental constitutional right it is clear that the state rule must yield". Braswell v. Wainwright, 463 F.2d 1148, 1154 (5 Cir. 1972).

7. The Court stated:

   "We hold that the petitioner in this case was denied his right to have compulsory process for obtaining witnesses in his favor because the State arbitrarily denied him the right to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been relevant and material to the defense." 388 U.S. at 23.

to collateral questions which relate only to his credibility and do not concern the subject matter of his direct examination.

▮ As noted, *supra*, the Supreme Court of Wisconsin declined to reverse Monsoor's conviction on the ground that the error in striking Lyons' testimony would not have "probably affected the result of the trial". 203 N.W.2d at 27. Before a federal constitutional error, however, can be held harmless, "the court must be able to declare a belief that it was harmless beyond a reasonable doubt" Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). See also United States v. Scott, 494 F.2d 298 decided by this court on February 26, 1974.

The district court did not consider the question of harmless error, since it found no constitutional violation. However, in holding that appellant had been given a fair trial the district court stated that "Lyons's testimony was, at best, collateral to the issue of the case which was whether petitioner did or did not sell marijuana to a state law enforcement officer." [8] The sale was admitted by Monsoor. The defense was entrapment, and the effect of striking Lyons' testimony must be considered with respect to the entrapment defense.

▮ Entrapment occurs "when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute". Sorrells v. United States, 287 U.S. 435, 442, 53 S.Ct. 210, 212, 77 L.Ed. 413 (1932). Appellant contends that Lyons' testimony

was relevant to his entrapment defense since it corroborated his testimony that (1) there was persistent solicitation by Bowman for the sale of marijuana; and (2) he received no telephone call from Bowman on March 16, the date of the marijuana sale to Kasabuske and Bowman.

▮ In addition to Lyons, four other witnesses corroborated Monsoor's testimony that on numerous occasions he had refused to sell marijuana to Bowman, although Bowman had persistently begged him to do so. On the issue of "persistent solicitation" Lyons' testimony was cumulative, and we are satisfied that the striking of this portion of his testimony was harmless beyond a reasonable doubt.

▮ The informer, Bowman, did not testify. Kasabuske testified regarding Bowman's alleged conversation with Monsoor, stating that Bowman told him that Monsoor had said he had some "grass" and had agreed that Bowman could "bring a friend over", presumably to purchase the marijuana. This testimony demonstrated a predisposed willingness on the part of Monsoor to commit a crime—a fact fatal to the defense of entrapment. Monsoor's rebuttal was that he did not receive a phone call from Bowman. Lyons corroborated this, testifying that he was the one who talked with Bowman, and related the conversation. This testimony was then stricken.[9] We cannot say that the striking of this testimony was harmless beyond a reasonable doubt and "did not contribute" to Monsoor's conviction.[10]

Reversed and remanded for further proceedings consistent with this opinion.

8. The Supreme Court of Wisconsin similarly concluded that "Whether Bowman's phone conversation * * * was actually with Monsoor or Lyons is of no consequence. It did not have anything to do with the facts surrounding the actual sale." 203 N.W.2d at 27.

9. As was stated in *Braswell, supra* at 1155–1156:

"[The defendant] had a right to at least present the testimony of his sole corroborating witness to the jury. That the jury might still have returned a guilty verdict is beside the point; judgment of the credibility of witnesses is for the trier of fact."

10. Chapman v. California, *supra* at 26.