**UNITED STATES of America, Appellee,**

v.

**Anthony LANZA, Anthony Nuzio, Vyscheslav Lyubarsky, a/k/a "Slava", and Roman Zonesashville, Defendants.**

**Appeal of Vyscheslav LYUBARSKY, a/k/a "Slava", Roman Zonesashvili, and Anthony Lanza, Defendants-Appellants.**

**Nos. 41, 42 and 36, Dockets 85–1053, 85–1108 and 85–1115.**

United States Court of Appeals, Second Circuit.

Argued Sept. 3, 1985.

Decided May 7, 1986.

Paul E. Summit, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Warren Neil Eggleston, Asst. U.S. Atty., New York City, of counsel), for appellee.

Malvina Nathanson, Commack, N.Y. (Robert C. Gottlieb, Sussman & Gottlieb, Commack, N.Y., of counsel), for defendant-appellant Vyscheslav Lyubarsky *.

Barry Bassis, The Legal Aid Society, Federal Defender Services Unit, New York City, for defendant-appellant Roman Zonenashvili.

---

* Appellant Lyubarsky's given name and appellant Zonenashvili's surname are spelled differently at various points in the record.

Irving Anolik, New York City (Irving Anolik and Joseph Panzer, New York City, of counsel), for defendant-appellant Anthony Lanza.

Before FRIENDLY,** PIERCE and PRATT, Circuit Judges.

PIERCE, Circuit Judge:

These appeals are from judgments of conviction in the United States District Court for the Southern District of New York, Inzer B. Wyatt, *Judge*, after a jury trial for conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371. Appellants Anthony Lanza and Vyscheslav Lyubarsky were sentenced to four years' imprisonment, and appellant Roman Zonenashvili to three years' imprisonment.

Lanza presents three issues on appeal: the sufficiency of the evidence for his conviction; the impact of allowing testimony by the government's principal witness Yan Zubok that he was shown a picture of Lanza at a Federal Bureau of Investigation (FBI) office; and the denial of Lanza's motion for a severance.

Lyubarsky and Zonenashvili contend that certain evidentiary rulings relating to the cross-examination of Zubok and to the proffer of extrinsic impeachment evidence vis-a-vis Zubok deprived them of their right to confront witnesses and to present a defense. Lyubarsky and Zonenashvili also challenge the court's instructions to the jury concerning conscious avoidance with regard to knowledge and specific intent.

We affirm.

## BACKGROUND

The government's proof at trial consisted principally of the testimony of Yan Zubok, a cooperating witness, and tape-recorded telephone conversations which Zubok had with both Lyubarsky and Nuzio regarding the alleged conspiracy. Nuzio, a co-defendant, pleaded guilty on the first day of trial and later testified on Lanza's defense case.

Zubok testified that he immigrated to the United States in 1976; in 1980, he found employment in New York City with Lemiro International (Lemiro), a jewelry store owned by Gregory Lekach. Zubok worked intermittently at Lemiro between 1980 and August 1983, during which time he met Lyubarsky. In 1983, Zubok left Lemiro and opened his own jewelry business in Chicago, Illinois, which he named Keyiasso. He later learned that there had been a burglary at Lemiro and suspected that it was a fraudulent burglary to obtain insurance proceeds. He testified that thereafter Lyubarsky suggested to him that they do at Keyiasso "exactly what Lekach did" at Lemiro.

In April, 1984, Zubok went to New York where he met with agents from the FBI. He told the agents of his conversation with Lyubarsky, and thus began his cooperation with the FBI. On April 26, 1984, Zubok met Lyubarsky in Forest Hills, Queens, and Lyubarsky asked him about the safe and alarm system at Keyiasso and told him that he would "talk with people, and ... decide what he will do in my office." The next day Zubok met Lyubarsky in Manhattan and was driven to Bay Ridge, Brooklyn. En route, he told Zubok that he would introduce him to his "boss". Upon arrival, Zubok was introduced to a man later identified by Zubok as Anthony Lanza. At the meeting, Lanza also questioned Zubok about the safe and alarm system at Keyiasso.

On April 30, 1984, Lyubarsky introduced Zubok to Nuzio and Zonenashvili at a restaurant in Brooklyn, at which time Zubok was checked with a metal detector. During the meeting, Nuzio told Zubok that the operation would have to "go the right way" or "we will crush your head". Nuzio inquired about insurance coverage and whether Zubok would need any help in order to raise his inventory to the appropriate level. Zubok told them that Keyiasso

---

** Due to the death of Judge Henry J. Friendly, this case has been decided by the two remaining members of the panel pursuant to § 0.14(b) of the Rules of the United States Court of Appeals for the Second Circuit.

had $750,000 of insurance coverage and declined further assistance. Zubok also testified that it was "agreed that the [burglary] would take place at the time when [Keyiasso] had somewhere between 500 and 800 thousand dollars worth of merchandise".

On May 2, 1984, Lyubarsky and Zonenashvili met with Zubok at Keyiasso in Chicago, and informed him that he would be visited by individuals who would survey his safe and alarm system. According to the testimony of Zubok's son, Eugene, and Nuzio, on May 7, 1984, Lyubarsky, Zonenashvili and Nuzio inspected the Keyiasso premises.

Three days later, Lyubarsky and Nuzio met Zubok at Kennedy Airport in New York. Zubok was told by Lyubarsky that the operation was proceeding smoothly and that "the most important task now [was] to acquire merchandise." It was the government's theory, as explained in opening argument (Tr. 111), that Zubok's role in the phony burglary scheme was to obtain jewelry on credit and store it in his vault at Keyiasso. After the jewelry was stolen by burglars hired by Lanza, the jewelry was to be divided and held by each of the conspirators until the insurance proceeds were received. During this trip to New York, Zubok met with Lanza, Nuzio and Lyubarsky at a Brooklyn restaurant. During the meeting, Lanza discussed the manner in which the merchandise would be divided between them, and Nuzio again threatened Zubok's life unless he carried out his part of the scheme.

In late May, sometime after an unsuccessful attempt by Lyubarsky, Zonenashvili and Zubok to obtain jewelry on credit, Zubok came to New York and was unexpectedly met at the airport by Lyubarsky, Zonenashvili and Nuzio. They took him to a private social club in Brooklyn, where Lanza joined them. Lanza informed Zubok that the burglars had already been paid $150,000 for their part in the scheme and told him that if he failed to obtain the required merchandise he would be killed.

In addition to testimony by Zubok and Zubok's adult son, Eugene, the government played taped telephone conversations between Nuzio and Zubok. In these tapes, Nuzio is heard to threaten to kill Zubok if he failed to obtain certain merchandise on credit. Nuzio also makes references to "my boss" and to "Tony" during discussions of the scheme.

Only Lanza presented a defense case. He called Nuzio as a witness and Nuzio testified that Lanza was not present at any of the meetings with Zubok, but his testimony otherwise corroborated much of Zubok's testimony. Nuzio testified that the objective of the scheme was to "con" Zubok into obtaining merchandise and giving it, as well as the $150,000 compensation for the supposed burglars, to the three of them, but that there was never any agreement to actually go through with the burglary or to defraud the insurance company. Nuzio testified that Lanza was not his boss and that the references to "my boss" and to "Tony" on the tape recordings were intended to scare Zubok into thinking that Nuzio had powerful "Italians" working with him.

The sole theory of defense for Lyubarsky and Zonenashvili was that while all these events did occur the purpose behind them was not the conspiracy charged in the indictment, i.e., "a scheme to stage a sham burglary at a Chicago, Illinois, jewelry store and thereby to defraud the store's insurance carrier", but was a scheme to ultimately extort money directly from Zubok. Lanza's defense was based upon his denial of any participation whatsoever in the unlawful activities charged in the indictment.

## DISCUSSION

### A. Lanza's Claims.

Appellant Lanza raises three issues on appeal. He contends that there was insufficient evidence for his conviction, that the testimony by Zubok which referred to his being shown Lanza's picture at an FBI office "vitiated Lanza's right to be presumed innocent until proven guilty", and

that, since his voice was not on the tape recordings which were introduced into evidence, his trial should have been severed from the trial of his co-defendants. We reject each of Lanza's arguments.

■ As to the sufficiency of the evidence, in light of Zubok's testimony regarding the above-described events which he stated occurred on three separate occasions in Lanza's presence and his testimony that Lanza told Zubok that $150,000 had been given to the burglars, coupled with the references by the alleged co-conspirator, Nuzio, to "Tony" and "my boss" on the tape recordings, the jury was free to draw reasonable inferences from this evidence and make determinations as to the credibility of the various witnesses. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Losada*, 674 F.2d 167, 173 (2d Cir.), *cert. denied*, 457 U.S. 1125, 102 S.Ct. 2945, 73 L.Ed.2d 1341 (1982). It is clear that there was sufficient evidence upon which reasonable jurors could infer Lanza's guilt beyond a reasonable doubt, and Lanza has failed to meet the heavy burden which a convicted defendant must meet when challenging a verdict for insufficiency of evidence. *United States v. Soto*, 716 F.2d 989, 991 (2d Cir.1983).

■ Similarly, we are unpersuaded by Lanza's argument that Zubok's testimony about being shown a picture of Lanza at the FBI's offices unfairly prejudiced him and infringed upon his right to a presumption of innocence. Appellant relies upon *United States v. Reed*, 376 F.2d 226 (7th Cir.1967), to support the proposition that such references vitiate a defendant's right to be presumed innocent until proven guilty, and, therefore, constitute prejudicial error. However, *Reed* presented a factual predicate which was substantially different from this case. It involved several references to "mug shots"; the defendant was referred to as "a former [inmate] of the state prison"; and there were references to defendant being met "after he was released from prison." *Id.* at 228–29. The challenged testimony by Zubok did not sug-

gest that the picture was selected from a collection of photographs of criminals; it merely revealed that Zubok saw the picture at FBI offices. We find no undue prejudice to Lanza where the statement contained no suggestion that he had ever committed a crime. The fact that it may have allowed an inference that Lanza had been under investigation at some point is insufficient to support appellant's contention, *see, e.g., United States v. Dichiarinte*, 385 F.2d 333, 337 (7th Cir.1967) (distinguishing *Reed* on the basis that references to prison photos are unfairly prejudicial while references to non-prison photos are not), *cert. denied*, 390 U.S. 945, 88 S.Ct. 1029, 19 L.Ed.2d 1133 (1968). While a cautionary instruction might have been appropriate, we note that no such instruction was requested. In sum, we find this argument to be meritless.

■ As for Lanza's motion to sever, severance of criminal co-defendants, under Rule 14 of the Fed.R.Crim.P., is within the broad discretion of the district court.

> The defendant seeking a severance must shoulder the difficult burden of showing that the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials.

*United States v. Panza*, 750 F.2d 1141, 1149 (2d Cir.1984) (citing *Losada*, 674 F.2d at 171). Though Lanza's voice was not heard on the tape recordings, the testimony which placed Lanza in attendance during meetings with Zubok and with co-conspirators as well as other common evidence was before the district judge for his consideration in weighing prejudice against judicial economy. Lanza has not met his burden and the district court did not err in denying the motion for a severance.

**B. Issues Regarding Evidentiary Rulings**

Lyubarsky and Zonenashvili contend that the trial judge unfairly limited their right to show, through cross-examination and by introduction of extrinsic evidence, that Zubok was heavily in debt. They sought to introduce such evidence for purposes of impeachment as well as in support of their

defense that the insurance fraud scheme charged in the indictment was not the scheme they had in mind.

The broad rule is that the permissible scope and extent of cross-examination are generally within the sound discretion of the trial court. *Alford v. United States,* 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931); *United States v. Pedroza,* 750 F.2d 187, 195 (2d Cir.1984). Moreover, the trial court has discretion regarding the "mode ... of interrogating witnesses" to make the presentation effective for the "ascertainment of truth" and "to avoid needless consumption of time." Fed.R. Evid. 611(a); *See United States v. Bari,* 750 F.2d 1169, 1178 (2d Cir.1984); *United States v. Singh,* 628 F.2d 758, 763 (2d Cir.), *cert. denied,* 449 U.S. 1034, 101 S.Ct. 609, 66 L.Ed.2d 496 (1980). Here, the district judge's rulings were within his discretion and subject to review only for an abuse of discretion.

Zubok testified on direct examination for approximately two days. He was then cross-examined for approximately two and a half days. However, appellants contend that the court erred in limiting their inquiry regarding the details of certain specific aspects of Zubok's financial situation. Questioning was allowed regarding Zubok's financial relationship with Lyubarsky and Zonenashvili. Some questioning also was allowed regarding Zubok's financial condition during the period of the alleged illegal activities, e.g., evidence concerning a loan Zubok obtained to purchase a taxi cab. However, the district court limited cross-examination regarding an alleged civil action involving the purchase of the taxi. Relying upon Rule 608(b) of the Fed.R. Evid., the court held that the line of questioning was "not sufficiently relevant to the issue of credibility."

Appellants contend that the court's limitation upon their questioning of Zubok about this and other loans and debts allegedly owed to merchants in the jewelry business, the financial condition of Zubok's jewelry store, and the contents of his income tax return was error. We disagree. Ap-

pellants sought to inquire for purposes of impeachment and in an attempt to show that Zubok was the type of individual who borrows money but does not repay it, and hence that he was likely to have acted similarly with regard to his financial relationship with them. However, Zubok's financial position had little, if any, relevance to his credibility. Further, while we note that the failure to pay debts is not a *crimen falsi,* under Rule 404(b) of the Fed.R. Evid., evidence of bad acts is, in any event, inadmissible to prove the character of a person in order to show that "he acted in conformity therewith" on a particular occasion. We conclude that the district judge did not abuse his discretion in this ruling.

Appellants also attempted unsuccessfully to present evidence about Zubok's finances by offering to call three witnesses to whom Zubok was allegedly indebted. This evidence did not relate to any debts owed to appellants, was not probative of Zubok's credibility and, hence, was subject to the limits of Rules 404(a), (b), and 608(b) of the Fed.R.Evid.; we conclude that these rulings were not erroneous.

## C. Issues Regarding The Jury Charge

Lyubarsky and Zonenashvili assert that the district judge did not charge the jury with sufficient particularity as to the specific intent required for a conspiracy conviction. They challenge the use of a "conscious avoidance" charge as unwarranted given their denial of participation in the offense charged and their defense that they intended to commit a different crime. Appellants also argue that such a charge was improper since it allowed the jury to convict without finding beyond a reasonable doubt that appellants had knowledge of the specific conspiracy charged.

■ As for the first of these contentions, we note that Judge Wyatt began his instruction by reading the indictment to the jury and that the indictment was sent into the jury room during deliberations. Thereafter, the jury was charged at least twice that they must find the existence of a conspiracy "as charged in the indictment".

On two other occasions the judge specifically stressed that the object of the conspiracy must have been to defraud the insurer of Zubok's Chicago jewelry store. Then, during deliberation, in response to a note from the jury and in order to satisfy objections raised by Lyubarsky's counsel, the trial judge emphasized in supplemental instructions that the appellants' "guilty knowledge" must have related to "a scheme as charged in this indictment here on trial". Thus, it is clear that the jury was adequately instructed on the finding of intent required to warrant conviction.

■ Apropos appellants' arguments against the use of the "conscious avoidance" instruction, see *infra*, the government's primary response is that defense counsel did not raise these arguments when they objected at trial and have failed to preserve the issues for appellate review. Fed.R.Crim.P. 30. Therefore, the government contends, appellants must show that the district judge's instructions, if erroneous, constituted plain error going to the very essence of the case, citing *United States v. Cano*, 702 F.2d 370, 371 (2d Cir. 1983); *United States v. Praetorius*, 622 F.2d 1054, 1061 (2d Cir.1979), *cert. denied*, 449 U.S. 860, 101 S.Ct. 162, 66 L.Ed.2d 76 (1980).

We conclude that these objections were not raised before the trial judge and were, therefore, waived by this failure under Rule 30. Defense counsel had the opportunity to object to the conscious avoidance charge on three separate occasions: at the charging conference, after the initial jury charge, and again before Judge Wyatt prepared the supplemental charge in response to the jury request for clarification of the guilty knowledge issue. Yet, no specific objection was made to the use of a conscious avoidance charge. The defense did make several objections and suggestions to the court regarding the effect the charge might have upon the defense theory that the defendants were involved in a different unlawful agreement but not in the specific conspiracy alleged in the indictment.[1] In spite of attempts by appellants to characterize these as objections to the use of the "conscious avoidance" charge, they were insufficient to direct the trial court's attention to the precise contention now being urged upon appeal. *United States v. Pinto*, 503 F.2d 718 (2d Cir.1974). Since the conscious avoidance arguments are raised for the first time on appeal, the question before us is whether the district judge's inclusion of the conscious avoidance language constituted plain error. *Cano*, 702 F.2d at 371.

■ The conscious avoidance of knowledge language is to be found in the Model Penal Code's definition of "knowledge."

> When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is aware of a high probability of its existence unless he actually believes that it does not exist.

Model Penal Code § 2.02(7) (Proposed Official Draft 1962). Appellants rely heavily upon dicta in *United States v. Mankani*,

---

1. For example, when objecting to the charge at the charging conference, defense counsel stated that the charge as it stood "may have given the jury the impression that if they use the wire for defrauding a particular individual by extortion or by some other means and not this specific experience, it may give the jury an out." Again, when the jury asked for a clarification of the charge on the subject of guilty knowledge defense counsel stated:

> I would request that tomorrow specific intent be explained again to the jury regarding guilty knowledge, *specifically that the guilty knowledge and intent must refer not only to a general fraud by way of [sic] wire but it has to be tied specifically into the indictment* referring

to the scheme to have a sham burglary for the purpose of insurance fraud. I think that's most relevant regarding guilty knowledge and intent of defendants. (Emphasis added)

At no point either during the charging conference, immediately after the jury was charged, or when the jury requested a clarification of the charge, did any of the attorneys for the defense articulate a concern that the jury might find that a defendant was a member of the conspiracy based solely on a conscious avoidance of guilt theory. The only objection expressed was that the jury might be able to convict on a theory not charged in the indictment, and on that issue, the district judge's charge was free from error.

738 F.2d 538, 547 & n. 1 (2d Cir.1984) (questioning use of conscious avoidance theory to establish knowing participation in conspiracy) to support their argument that the conscious avoidance charge is inappropriate since the indictment charges conspiracy but not the underlying substantive offense.

The conscious avoidance charge commonly has been used where a defendant has claimed lack of some specific aspect of knowledge necessary to conviction but where the evidence may be construed as deliberate ignorance. *See, e.g., United States v. Mackenzie,* 777 F.2d 811, 818–19 (2d Cir.1986) (conspiracy, false filing of tax returns, and aiding and abetting false filling in connection with withholding taxes); *United States v. Guzman,* 754 F.2d 482, 489 (2d Cir.1985) (possession of cocaine with intent to distribute: conspiracy and underlying offense charged); *United States v. Mohabir,* 624 F.2d 1140, 1154 (2d Cir.1980) (conspiracy to defraud U.S. by manufacturing counterfeit immigration documents and knowingly receiving illegally imported goods); *United States v. Joyce,* 542 F.2d 158, 161 (2d Cir.1976) (per curiam) (possession of stolen goods: conspiracy and underlying offense charged); *United States v. Dozier,* 522 F.2d 224, 227 (2d Cir.) (aiding and abetting possession of cocaine with intent to distribute), *cert. denied,* 423 U.S. 1021, 96 S.Ct. 461, 46 L.Ed.2d 394 (1975); *United States v. Joly,* 493 F.2d 672, 676 (2d Cir.1974) (importing and unlawfully possessing cocaine); *United States v. Jacobs,* 475 F.2d 270, 287–88 (2d Cir.1973) (dealing in stolen securities: conspiracy and underlying offense charged); *United States v. Brawer,* 482 F.2d 117, 128–29 (2d Cir.1973) (same); *see also United States v. Nicholson,* 677 F.2d 706, 710–11 (9th Cir. 1982) (conspiracy to possess marijuana with intent to distribute and conspiracy to import marijuana); *United States v. Brien,* 617 F.2d 299, 312 (1st Cir.) (conspiracy to commit mail and wire fraud in the sale of commodity options), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273 (1980); *United States v. Jewell,* 532 F.2d 697, 702–704 & n. 12 (9th Cir.) (en banc) (possession of a controlled substance with intent to manufacture, distribute or dispense), *cert. denied,* 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976); *United States v. Austin,* 614 F.Supp. 1208, 1222 (D.C.N.M.1985) (conspiracy to distribute marijuana in excess of 1000 pounds); 1 Devitt & Blackmar, *Federal Jury Practice and Instructions* § 14.09 (3d ed. 1977 & 1985 Supp.) (stating that some form of the conscious avoidance charge has been approved in all circuits except the 4th and 6th). These cases also instruct that conscious avoidance charges have been upheld on appeals: a) from convictions for substantive offenses that require "knowledge" or "knowing" activity, b) from convictions for conspiracy to commit such offenses, and c) from convictions for both. Accordingly, we reject appellants' argument that the conscious avoidance charge was inappropriate in this conspiracy case simply because the underlying substantive offense was not charged.

There are at least two aspects of knowledge involved in a conspiracy: 1) knowing participation or membership in the scheme charged and 2) some knowledge of the unlawful aims and objectives of the scheme. The language of *Mankani,* relied upon by appellants, relates to the knowing participation or membership aspect of the scheme charged. *See also United States v. Ciambrone,* 787 F.2d 799, 810 (2d Cir. 1986) ("membership in a *conspiracy* cannot be proved by conscious avoidance"). Here there is no question regarding appellants' participation in an unlawful scheme, the appellants' defense admits as much. The only question is whether appellants had knowledge of the unlawful aims and objectives of the scheme charged in the indictment. *United States v. Reed,* 790 F.2d 208 (2d Cir.1986) (Where, as here, the defendant has become a member of a joint undertaking, he cannot avoid responsibility for acts by closing his eyes to what is readily apparent.) While it is not necessary to a conviction for conspiracy for the government to prove that the accused knew all of the unlawful aims and objec-

tives of the scheme charged, the government must demonstrate that the accused had *some* knowledge of its unlawful aims. Here, a conscious avoidance charge was appropriate vis-a-vis knowledge of the objectives of the scheme charged since the appellants assert what amounts to ignorance of the specific objectives alleged in the indictment.

Whether appellants participated in a scheme aware of the objective of defrauding Zubok's insurance carrier or participated in a scheme to "con" Zubok was an issue for the jury to decide from all the evidence presented. This evidence included, *inter alia*, Zubok's testimony that Nuzio inquired of him, in the presence of Lyubarsky and Zonenashvili, on April 30, 1984, at Nino's Restaurant in Brooklyn, about Zubok's insurance coverage, and whether he needed any help to raise his level of inventory. During direct examination Zubok testified as follows:

Q. And was there a conversation at Nino's?

A. Yes.... The conversation started whereby Tony Nuzio told me how they were serious people, and if something does not go the right way, then be advised that we will break your head. We will crush your head.

Q. Please continue.

A. Then he asked me in what amount is my insurance. I told him it was $750,-000. Later on he asked me if I needed some help in order to raise my inventory so he would also help me.

Q. What was the purpose of building the inventory?

A. We agreed that the robbery would take place at the time when I had somewhere between 500 to 800,000 worth of merchandise.

(Tr. 217).

Since we conclude that a conscious avoidance charge was appropriate in this case, we now turn to appellants' final arguments regarding the specific language used by Judge Wyatt to explain the conscious avoidance principle. As discussed *supra*, neither of these arguments were presented to the district court, therefore, appellants must establish that the charge, when read in context, was sufficiently erroneous to establish plain error. *Dozier*, 522 F.2d at 227. Judge Wyatt charged as follows:

In determining whether a particular defendant acted knowingly, or in other words, had guilty knowledge, you may consider whether the defendant deliberately closed his eyes to what otherwise would have been obvious to him. By this I mean that a finding of guilty knowledge cannot be avoided by a showing that the defendant deliberately closed his eyes to the essential nature of the conspiracy and its unlawful purpose.

It is not necessary that the government prove to a certainty that a particular defendant knew a scheme existed to defraud the insurer of Zubok's Chicago jewelry store by staging a sham burglary. *Rather, it is enough if the government proves beyond a reasonable doubt that the defendant was aware of a high probability that such a scheme was in existence,* unless you find that the defendant actually believed that he and his associates were acting in a lawful manner.

I must emphasize at this point that guilty knowledge cannot be established by showing mere negligence or even foolishness on the part of a defendant.

(Tr. 1323–24) (emphasis added).

Appellants argue that the use of the high probability language served to effectively reduce the government's burden of proof and allowed conviction where the proof of knowledge of the specific conspiracy charged in the indictment was less than beyond a reasonable doubt. We conclude that appellants have failed to establish plain error in this regard.

While the "high probability" language derives directly from the same source as the charge itself, the Model Penal Code, courts have warned that reliance upon the language of a legal definition, from the Model Penal Code or elsewhere, may confuse and ultimately mislead the jury. *See*

*United States v. Jacobs,* 475 F.2d 270, 287 (2d Cir.1973) ("[A] good definition, like the language of a sound judicial opinion, ... is not necessarily appropriate as a charge."); *Brawer,* 482 F.2d at 128. Though there are other formulations of this particular instruction,[2] the question presented here is whether Judge Wyatt's charge, when read in context, required something less than proof beyond a reasonable doubt. It did not. The use of the high probability language occurs right in the midst of language which instructs that proof beyond a reasonable doubt was required to establish the requisite specific intent. Also, within the very paragraph containing this language, reference is made to the specific conspiracy charged in the indictment regarding a scheme to defraud the insurer of Zubok's Chicago Jewelry store. In *United States v. Aulet,* 618 F.2d 182 (2d Cir.1980), after review of the relevant cases, we stated:

> The principle to be gleaned from these cases is that a conscious avoidance charge must include references to a purposeful avoidance of the truth, ... an awareness of high probability, ... and the absence of defendant's actual belief in the nonexistence of the crucial fact,.... All of these elements were present in [the] charge, and, therefore, there is no error.

*Id.* at 191 (citing *United States v. Valle-Valdez,* 554 F.2d 911 (9th Cir.1977) (finding a charge deficient for failure to include such "high probability" language)). Judge Wyatt was equally careful to include all of these necessary elements in his charge to the jury. Therefore, we find no error as to these challenged portions of the district judge's conscious avoidance charge.

Appellants also question the court's use of the language "unless you find that the defendant actually believed that he and his associates were acting in a lawful manner" in its charge. Appellants contend that this aspect of the charge "precluded the jury's consideration of their defense". While the more appropriate language might have been "unless you find that the defendant actually believed that he and his associates were not scheming to defraud Zubok's Chicago jewelry store insurer", appellants did not raise this particular objection with sufficient specificity before the district judge and we do not find that it rises to the level of plain error.

We affirm the judgments of conviction.

---

**2.** Consider:
The element of knowledge may be satisfied by inferences drawn from proof that a defendant deliberately closed his eyes to what would otherwise have been obvious to him. A finding beyond a reasonable doubt of a conscious purpose to avoid enlightment would permit an inference of knowledge. Stated another way, a defendant's knowledge of a fact may be inferred from willful blindness to the existence of the fact.
Devitt & Blackmar, *Federal Jury Practice and Instructions* § 14.09 (3d ed. 1977 & 1985 Supp.).

In the notes following this section, however, the widespread use of the "high probability" formulation is acknowledged and it is recommended that a request to include it in a guilty knowledge charge be granted. Including both this language, the balancing language, and the Model Penal Code "high probability" language in the charge appears to be the best approach. *See, e.g., United States v. Mohabir,* 624 F.2d 1140, 1154 (2d Cir.1980); *Jacobs,* 475 F.2d at 287–88; *Brawer,* 482 F.2d at 122–29).