MEMORANDUM OPINION
 

 CINDRICH, District Judge.
 

 Defendant James Nesser was convicted on April 19, 1996 of conspiracy to distribute drugs, conspiracy to launder money, money laundering, and engaging in illegal monetary transactions. After the trial he timely moved for judgment of acquittal or for new trial; for bail or release pending sentence; and for enforcement of a plea agreement. After a full day of argument and testimony on July 17, 1996, the court at the end of the hearing orally denied the motion for enforcement of a plea agreement. We held another half day of argument on the remaining motions on July 31, 1996. For the reasons stated below, Nesser’s motion for judgment of acquittal will be denied. His motion for bail or release pending sentence is considered in a separate memorandum opinion and order.
 

 MOTION FOR JUDGMENT OF ACQUITTAL AND/OR FOR NEW TRIAL
 

 Nesser makes three arguments in his motion for judgment of acquittal. First, he contends that the court improperly instructed the jury on willful blindness. Second, he argues that the evidence was insufficient to convict him. Third, he asserts that he was improperly charged with, and convicted of, two different conspiracies based on the same activity.
 

 A.
 
 Willful Blindness
 

 Nesser’s co-defendant Beverly Whethers made similar arguments with regard to the willful blindness charge. Having rejected her contentions, we reach the same conclusion as to his, which conclusions we essentially repeat below.
 

 At trial and now, Nesser and Beverly Whethers asserted that a willful blindness instruction opened the door to a conviction for negligent, as opposed to knowing, behavior. We believe the language of the instruction met defendants’ concerns by explicitly
 
 *419
 
 stating, and repeating, that the jury could not convict for stupidity, negligence, or recklessness, and that criminal knowledge was based on subjective knowledge, or its equivalent, narrowly defined. Thus, a review of the willful blindness portion of the court’s charge, in context and read as a whole with the remainder of the charge, lays Nesser’s contention to rest.
 

 Nesser also argued that willful blindness placed a burden on him to offer proof that he did not have guilty knowledge, contrary to the Fifth Amendment. This argument is based on language in the charge that one aspect of willful blindness is the defendant’s deliberate failure to investigate suspicious circumstances. Nesser contends that this language created a burden for him at trial to explain to the jury why he did not investigate the sources of the Whethers’ money he handled.
 

 No such burden at trial is created. Nesser confuses conduct that is part of willful blindness
 
 at the time of the alleged crimes
 
 with his obligations at trial. Following the commands of the willful blindness charge a jury might consider whether a defendant had reason to inquire into suspicious conduct before becoming more deeply involved in it — i.e., whether he willfully blinded himself to the truth. In that sense, a jury might find that a defendant had some responsibility to act to inform himself at the time the crime was committed, and that his deliberate failure to do so is tantamount to knowledge. This does not, however, translate into either the burden of coming forward or the burden of persuasion at trial.
 

 To the extent that the mere giving of the instruction was objectionable and forms the basis for Nesser’s motion for acquittal, our authority for the instruction’s use and phrasing was
 
 United States v. Caminos,
 
 770 F.2d 361 (3d Cir.1985), and
 
 United States v. One Rolls Royce,
 
 43 F.3d 794 (3d Cir.1994), both discussed with counsel at the time of the charge. The latter is a forfeiture case, but which examines in detail the meaning and origins of willful blindness, and was cited to us by Nesser as favorable precedent.
 

 The circumstances justifying the giving of a willful blindness charge are much more persuasive here than in
 
 Caminos,
 
 the controlling case in this circuit.
 
 Caminos
 
 involved a one-time drug smuggling transaction. This case is based on Nesser’s years of association with Ronald Whethers as a client and sometimes social acquaintance. Nesser handled property transactions for Whethers. Nesser represented drug dealers who were part of Whethers’ organization. Whethers’ minions appeared at Nesser’s office. Nesser spent time at Whethers’ social club.
 

 Moreover, there was no evidence in
 
 Caminos
 
 that the defendant had any personal knowledge about being part of the drug transactions for which they were eventually convicted. Here, there was abundant evidence of Nesser’s detailed knowledge of Whethers’ financial affairs. There was also sufficient evidence to inform Nesser that Whethers’ financial affairs were funded by drug money, as we diseuss below. In other words, there is a notably narrower range of information about which he could profess ignorance than the defendant in
 
 Caminos,
 
 and therefore a shorter distance from willful blindness to affirmative knowledge. Given these circumstances, if a willful blindness charge was acceptable in
 
 Caminos,
 
 it surely was appropriate here.
 

 We feel compelled to add our view that the circumstantial evidence was sufficient for a reasonable jury to convict Nesser without resorting to a determination of whether he deliberately closed his eyes to the source of Ronald Whethers’ money and property. The jurors unquestionably had the option of convicting based on willful blindness, but they likewise could have convicted without reference to that instruction. The allegedly damaging effect of the willful blindness charge thus is likely overstated.
 

 At the July 31,1996 argument Nesser raised for the first time the argument that a willful blindness charge is improper on a conspiracy charge, as opposed to a substantive offense. There is no Third Circuit authority on this point. Instead, Nesser relied on
 
 United States v. Scotti,
 
 47 F.3d 1237, 1243 (2d Cir.1995), which in turn cites
 
 United States v. Lanza,
 
 790 F.2d 1015 (2d Cir.),
 
 cert.
 
 
 *420
 

 denied,
 
 479 U.S. 861, 107 S.Ct. 211, 93 L.Ed.2d 141 (1986), and
 
 United States v. Mankani,
 
 738 F.2d 538 (2d Cir.1984).
 

 Putting aside the fact that these cases are not controlling, they are also flawed.
 
 Mankani
 
 attempts to draw a distinction between knowledge of a conspiracy and intent that we do not find persuasive. 738 F.2d at 547 n. 1. More convincingly,
 
 Lanza,
 
 the later case, essentially ignores
 
 Mankani.
 
 790 F.2d at 1022 (“we reject appellants’ argument that the conscious avoidance charge was inappropriate in this conspiracy case simply because the underlying substantive offense was not charged,” collecting cases). We do not know why
 
 Scotti
 
 does not reconcile the inconsistency between
 
 Mankani
 
 and
 
 Lanza,
 
 but the net result here is that they do not change our conclusion.
 

 B.
 
 Sufficiency of Evidence
 

 In deciding a motion for judgment of acquittal based on sufficiency of evidence, we determine whether, after viewing this evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes charged against the defendant beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979);
 
 United States v. Messerlian,
 
 832 F.2d 778, 796 (3d Cir.1987),
 
 cert. denied,
 
 485 U.S. 988, 108 S.Ct. 1291, 99 L.Ed.2d 501 (1988).
 

 One purpose of the hearings on Nesser’s motion for judgment of acquittal, as we stated in our June 28, 1996 order setting the hearings, was for the United States to marshal its evidence on Nesser’s knowledge of Whethers’ drug organization.
 
 [1]
 
 The court was particularly seeking information about the essential, element of Count One that Nesser knew or was willfully blind to the purpose of the drug conspiracy charged in Count One, and then deliberately joined it.
 

 At the hearings and in a chronology of events it filed, the government made a showing of evidence the jury might have accepted demonstrating knowledge of Whethers’ involvement with illegal drugs.
 
 [2]
 

 (1) In late 1989 or early 1990 Detective Kyle Sneddon of the Uniontown Police Department advised Nesser that he was investigating Ronald Whethers for drug trafficking. This evidence could lead a reasonable jury to find that Nesser was at least willfully blind to the source of Whethers’ money as drug proceeds.
 

 (2) Between 1989 and 1993 Nesser represented Timothy Young, also known as New York Tim, on drug charges for which he was twice arrested in Uniontown, once by Det. Sneddon. New York Tim knew Whethers and his associates and sold drugs for Whethers’ organization. Nesser knew of New York Tim’s association with Whethers. New York Tim did not pay Nesser for his services.
 

 (3) Nesser represented Timothy Taylor in criminal cases in Uniontown for which he paid Nesser only a few hundred dollars. Taylor sold drugs for Whethers’ organization. Nesser knew of Taylor’s association with Whethers.
 

 (4) In September 1993, Pennsylvania State Police seized $43,000 from Floyd Roundtree and Rashard Long at Conley’s Motor Inn. Roundtree and Long both sold dnags for the Whethers organization. Before the troopers left the motel, Nesser contacted them and advised them that he represented Long. Nesser personally obtained a receipt for the seized money. Nesser later told IRS agent Hanlon in January 1994 that that event caused him to realize that the drug dealers with whom he was familiar were not small-time, but rather were big-time dealers, and that he distanced himself from them for that reason. Nesser knew of Roundtree’s connection with Whethers and indeed attempted to
 
 *421
 
 conceal it from federal scrutiny during the interview before his arrest.
 

 (5) Nesser frequented the Edenborn Social Club, a private club operated by Whethers, from 1991 to 1993, and was often seen talking with Whethers. Whethers’ drug associates also frequented the club. According to testimony, the social club was the situs for some aspects of Whethers’ drug business. These examples represent evidence from which the jury may have inferred that Nesser was aware of Whethers’ drug operation.
 
 [3]
 

 If the jury accepted that Nesser knew Whethers was a drug trafficker, the next element they were asked to consider was whether Nesser acted in a way to further the conspiracy. The laundering of Whethers’ money through the purchase of the Hoover farm, the sham sale of house 348, and the masked purchase of the Fomili property between October 1990 and August 1991 could qualify as events in furtherance of the conspiracy: Nesser assisted the drug conspiracy by attempting to arrange legitimate outlets for the drug proceeds. This assistance could be seen as making the drug operation more efficient, more difficult to detect, more rooted in the community, and allowing greater quantities to be sold.
 

 The only support for Nesser’s knowledge of Whethers’ drug dealing
 
 before
 
 the real estate transactions he facilitated was the Sneddon testimony. Nesser argues that this is insufficient evidence of his knowledge that Whethers’ money was drug-tainted. Sneddon’s statement is slim proof, but we are not prepared to find that no reasonable jury could attribute knowledge of Whethers’ drug activity to Nesser based on this statement. In any event, Nesser also made misrepresentations to IRS Special Agent Patrick Hanlon in January 1994 about: knowing Floyd Roundtree, one of Whethers’ associates; the sham sale of house 348; and Whethers’ use of a West Virginia condominium which Nesser had rented for Whethers. These deliberate concealments of facts from a federal investigator could easily be seen as an effort to protect Whethers. Hiding information about the leader of a drug conspiracy is another way to further its purpose, by allowing it to continue. We reject the contention that Nesser’s statements should be considered false exculpatory statements; his statements tend to exculpate Whethers, and not just him.
 

 In sum, we find sufficient evidence for a reasonable jury to decide that Nesser knew or was willfully blind to the existence of Whethers’ drug operation, and that he deliberately joined such conspiracy by acting to further its purpose.
 

 C.
 
 Duplicative Charges
 

 Nesser argues that he has been convicted twice for the same conduct, entitling him to a new trial on the money laundering conspiracy.
 

 As stated above, the jury convicted Nesser of conspiracy to distribute cocaine, 21 U.S.C. § 846, and conspiracy to commit a crime against the United States, 18 U.S.C. § 371, the crime being money laundering or engaging in illegal monetary transactions. The simple rejoinder to Nesser’s argument is that the proof required to convict him of each conspiracy in reality is not the same. A drug conspiracy requires an agreement to possess or distribute drugs and deliberate membership in the agreement. The government must prove Nesser’s knowledge (or willful blindness) of the drug purposes of the conspiracy, but need not prove an overt act. On the other hand, a money laundering conspiracy requires no proof of knowledge of the source of the money came from drug sales— only that the source was illegal. In addition, the section 371 conspiracy requires proof of an overt act.
 

 These findings lead us to reject Nesser’s argument as a matter of law. The test we apply is whether one offense requires proof of a fact that the other does not.
 
 Albernaz v. United States,
 
 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). Since the conspiracies plainly differ in this respect, they can be considered different violations, and Nesser
 
 *422
 
 can be punished cumulatively for each offense.
 

 [1]
 

 . In our view, this question was the only meritorious one on the issue of Nesser’s knowledge. Nesser's money laundering and illegal monetary transaction convictions require only knowledge (or willful blindness) that the money came from some unspecified unlawful activity. Given the strong and abundant evidence about Nesser's close involvement in Whethers' financial affairs, he did not present a significant post-trial question on these convictions.
 

 [2]
 

 . Each of the following events was established through testimony at trial by one or more of the persons named herein.
 

 [3]
 

 . Other potentially damaging evidence of Nesser’s drug knowledge, such as Nesser allegedly telling Whethers that New York Tim was not cooperating with the government, was rejected in deciding this motion. Such testimony, while appearing on the record at trial, was stricken at trial for lack of personal knowledge.